Thomas H. Belknap, Jr. JUDGE DANIELS
Richard V. Singleton II
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174
(212) 885-5270
tbelknap@blankrome.com
*Counsel for Compañia Sud Americana*
*De Vapores S.A.*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COMPAÑIA SUD AMERICANA DE VAPORES
S.A.

                                          Petitioner,

                -against-

AGENTES Y ESTIBADORES PORTUARIOS,
S.A.

                                          Respondent.

---

**15 CV 03619**

## VERIFIED PETITION IN SUPPORT OF APPLICATION FOR
## TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

Petitioner, Compañia Sud Americana De Vapores S.A. ("CSAV"), by its attorneys Blank Rome LLP, files this petition against Respondent Agentes Y Estibadores Portuarios, S.A. ("Ageport"), seeking a temporary restraining order and preliminary injunction in connection with an arbitration agreement as set forth more fully below, and alleges as follows:

### A. The Parties

1. Petitioner CSAV is a Chilean shipping company with its office and principal place of business at Plaza Sotomayor 50, Valparaiso, Chile.

2. Ageport is a corporation or other entity formed under the laws of the Dominican Republic with its registered office at Calle El Recodo, 2 Apto. 401, P.O. Box 22205, Santo Domingo, Distrito Nacional, República Dominicana.

3. Ageport was CSAV's agent in the Dominican Republic pursuant to a non-exclusive agreement between the parties dated May 1, 1999 (the "CSAV Agency Agreement").

4. This application for a temporary restraining order and preliminary injunction relates to steps taken and threats made by Ageport in breach of the New York law and arbitration clauses contained in the CSAV Agency Agreement and to threatened litigation or other proceedings in the Dominican Republic which are in breach of the agreement and also vexatious and oppressive. More specifically, CSAV seeks an order:

   A. That Ageport, whether by itself or through its directors, employees, officers, or agents (collectively "Ageport Group"), shall be enjoined from commencing, pursuing, or taking any steps in, or procuring or assisting the commencement or pursuit of, any proceeding outside the arbitration proceedings in New York in respect of any disputes between CSAV and Ageport arising under or in connection with the CSAV Agency Agreement, including without limitation, any questions regarding its existence, validity or termination or as to the rights, duties or liabilities of any of the parties arising out of or in relation to the said contract (the "Disputes");

   B. That Ageport Group shall further be enjoined from (i) commencing, pursuing, or taking any steps in, or procuring or assisting the commencement or pursuit of, any proceeding which seeks damages and/or compensation from E.T. Heinsen in relation to the Disputes and/or the termination by CSAV of the CSAV Agency Agreement, or (ii) taking any steps seeking to interfere with the activities of E.T. Heinsen, in providing any agency services to Hapag Lloyd, by threatening DP World Cucedo, or otherwise howsoever, in connection with the Disputes; and

   C. That Ageport Group shall further be enjoined from taking any steps whatsoever to obtain security of any form in support of proceedings encompassed by paragraphs (A) and (B) above, provided, however, that Ageport shall not be enjoined from seeking any relief to which it may otherwise be entitled in connection with the New York arbitration proceedings;

2

**B.  Jurisdiction and Venue**

5.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the dispute concerns enforcement of an arbitration agreement which is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*  This Court also has subject matter jurisdiction pursuant to 9 U.S.C. § 1333 because the claim involves enforcement of an arbitration agreement contained in a maritime contract.  This is an admiralty case within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

6.  This Court has personal jurisdiction over Respondent Ageport because the contract in dispute contains an arbitration clause by which the parties agreed to arbitrate disputes thereunder in New York under New York law.

7.  Venue is proper in New York under 28 U.S.C. § 1391(b)(3).

**C.  The Facts**

8.  The facts are more fully set forth in the Affidavit of Thomas H. Belknap, Jr. dated May 8, 2015 being filed simultaneously with this Petition.  Briefly stated, CSAV entered into the CSAV Agency Agreement to obtain agency services from Ageport including *inter alia* attendance to vessels calling in the Dominican Republic which were at that time operated by CSAV.

9.  The CSAV Agency Agreement was explicit in providing it was a "non-exclusive" agreement (Clause 2); that CSAV was free to employ other non-exclusive agents at any time (Clause 4.1); that Ageport's remuneration would in all circumstances be limited to the amounts expressly provided for in the agreement (Clause 5.1); that the agreement could be terminated on 60-days' notice (Clause 8.1); for any reason or no reason (Clause 8.3); and that no liability whatsoever may arise out of CSAV's termination of the agreement (Clause 10.3).

10. Clause 17 provided in relevant part as follows:

3

A. **17.1.** **[Governing Law and Arbitration]:** All disputes arising under or in connection with this agreement, if they cannot be amicably settled, shall be exclusively settled by arbitration in New York, in accordance with the rules of The New York Society of Maritime Arbitrators Inc. ("NYSMA") by a panel of three arbitrators, who shall be familiar with commercial agreements and fluent in English. Each party shall, if they cannot agree on a single impartial arbitrator, appoint one arbitrator and the two so appointed shall appoint a third. Should either party refuse or neglect to appoint an arbitrator within thirty (30) days of being required to do so, the arbitrator appointed by the other party may make a final decision alone and this decision shall be binding on both parties. ... Notwithstanding the foregoing agreement to arbitrate, the parties expressly reserve the right to seek provisional relief from any court of competent jurisdiction to preserve their respective rights pending arbitration. ...

B. **17.3.** This Agreement shall be governed by and construed in accordance with the law of the state of New York.

11. On April 16, 2014, CSAV and Hapag-Lloyd entered into an agreement pursuant to which CSAV sold its container business to Hapag-Lloyd. Hapag-Lloyd already had its own agent in the Dominican Republic, a company called E.T. Heinsen.

12. Ageport was informed at a meeting on January 22, 2015 that its services would no longer be required and that in due course the CSAV Agency Agreement would be terminated. In response to this news, Ageport threatened to make claims for compensation under Dominican Republic law (specifically under Law No. 173 dated April 6 1966 and its amendments, concerning the protection of the rights of agents and distributors of foreign merchandise and products ("Law 173")).

13. In a letter dated February 5, 2015 which was addressed to both CSAV and Hapag-Lloyd, and referred to the CSAV Agency Agreement, Ageport claimed to be entitled to compensation estimated at USD 9.35m. It is clear that Ageport is seeking to rely on Dominican Republic Law to try and achieve this enormous level of compensation,

4

rather than the contractually agreed New York Law under which no such damages would be available.

14. Another meeting followed on March 4, 2015, and on March 10, 2015 Ageport again wrote to CSAV and Hapag-Lloyd, repeating its estimate of losses at USD 9.35 and threatening to "file any legal actions [Ageport] deems necessary to protect [Ageport's] interests" if agreement was not reached by April 15, 2015.

15. Further discussions took place but no agreement was reached.

16. Ultimately, on April 2, 2015, CSAV gave Ageport sixty days' written notice of termination of the CSAV Agency Agreement, which will expire on May 31, 2015.

17. In view of Ageport's conduct, on April 2, 2015, simultaneously with providing notice of termination, CSAV commenced arbitration proceedings against Ageport in accordance with Clause 17 of the CSAV Agency Agreement, calling upon Ageport to agree to the appointment of David Martowski as sole arbitrator in respect of all disputes arising under the CSAV Agency Agreement.  To date, CSAV has received no response in relation to the commencement of arbitration in New York.

18. In addition to putting forward claims under Dominican Republic Law and refusing to participate in the New York arbitration proceedings, Ageport has recently also taken serious steps to disrupt the operations of Hapag-Lloyd and its agent E.T. Heinsen.

19. In particular, on April 22, 2015 Ageport served E.T. Heinsen with a notice entitled "Act of Opposition and Warning" ("the Opposition").  In this notice it was explained that Ageport was entitled to claim compensation under Law 173 and that if E.T. Heinsen provide services to vessels operating under the name of Hapag-Lloyd, as the continuation of services said by Ageport to have been provided by CSAV, this would constitute a violation of the rights of Ageport under Law 173 and that, in accordance with that law, E.T. Heinsen could be jointly liable with CSAV for payment of compensation.

131676.06506/100280404v.1

20. In a further attempt to disrupt Hapag-Lloyd's activities, on April 30 Ageport served a further Opposition, this time on DP World Cucedo ("DP World"), the operator of the terminal at which vessels operated by Hapag-Lloyd call at Cucedo.  This notice sets out in almost identical terms the basis on which Ageport says that it is entitled to compensation, warning DP World that it should avoid facilitating, collaborating or allowing CSAV from using the services of any other local agent for services for container vessels, including in particular for the CSAV Lumaco which was due to arrive on May 2, 2015.

21. Following receipt of this Notice, DP World contacted E.T. Heinsen to inform them that they intended to abide by this warning and thus would not allow E.T. Heinsen to attend the CSAV Lumaco.

22. Without an agent, the CSAV Lumaco would have been unable to enter the port, which would have resulted in very expensive delays to the vessel's schedule and/or other interruptions to service while the problem was resolved.

23. Ultimately, frantic negotiations led to DP World's agreeing to allow E.T Heinsen to work the Vessel in return for a letter of indemnity issued by Hapag-Lloyd.  Hapag-Lloyd's next vessel is due to call on May 22, 2015, however, at which time the same issue will arise again – as it will with each succeeding vessel as long as Ageport continues to pursue its claims.

24. Furthermore, CSAV has since received a copy of a further Opposition and Warning dated May 1, 2015, also addressed to DP World.  Ageport complains that the DP World system shows 35 containers as being owned by Hapag-Lloyd and demands that these units be allocated to CSAV and thereby to the alleged custody of Ageport.  DP World are asked to "cancel" the allocation within 1 day and also to not allow any future transfer or allocation of containers and/or equipment of CSAV without the agreement of Ageport.  Again, the Opposition threatens a claim for damages if their demand is not met.

6

### C. Dominican Law

25. The main purpose of Law 173 is to "protect" local agents and to obtain for them "the equitable or complete compensation of all the losses sustained by them, as well as the legitimate profits receivable of which they are being deprived." (Recitals to Law 173).

26. Further, Article 8 of Law 173, states that its provisions are of "public order" meaning that it purports to supersede any contractual clause which directly or indirectly limits the duration of the contract or the agent's rights not to be terminated unilaterally without just cause. It is unsettled law in the Dominican Republic whether Law 173 would permit a Dominican court to ignore a contract's arbitration clause; however, some local courts have recently accepted the validity of arbitration clauses in distributorship and agency agreements submitted to Law 173 on the ground that this is an economical public order that can be modified by the mutual agreement of the parties.

27. The termination or non-renewal of an agency contract, or the appointment of a new agent in the Dominican Republic, if the prior agent was an exclusive agent, whether by contract or in practice, is construed under Law 173 as termination, if made "unilaterally without a just cause." As a result of the foregoing and in the terms of Law 173, termination pursuant to a termination clause as may be established under the Agency Agreement, is insufficient; there must still be a further "just cause" for the termination to be without indemnity rights to the agent.

28. As stated above, in the absence of a just cause, the agent is entitled to claim damages based on the formula set out in Article 3 of Law 173. These include consideration of (in short summary):-

    A. All losses sustained by the agent due to the efforts he has made on behalf of the principal;

    B. The current value of capital investment for the acquisition or leasing of premises, equipment furniture and utensils;

7

C. The promotion value of the services offered according to the good will of the agent;

D. The amount of the gross profit obtained by the agent from the agency agreement during the previous five years. Where the agency arrangement has been in place/registered for more than 5 years, a further sum is payable, being the number of further years' service x 10% of the profits in the last 5 years.

29. Furthermore, Law 173 not only makes the principal liable, but also any third party whom he appoints as agent in substitution of the first. Such new agent is considered as "jointly responsible for the compensation payment". Given the joint liability established under Law 173 for both the principal and the new agent, an action can be instituted against either one of them or both. However, in the event that the claim is made only against the new agent, it is very likely that principal will be further included in the claim, upon request of the new agent.

30. One limitation on the application of Law 173 is that it can only be relied upon by an agent where he has made the appropriate registrations in the Foreign Exchange Department of the Central Bank. In this case, Ageport only made the relevant registration in relation to the Agency Agreement with CSAV on 22 June 2012.

## D. The Arbitration Clause and an Injunction in respect of proceedings against the Applicants

31. Clause 17 of the CSAV Agency Agreement is very clear in providing a mandatory jurisdiction clause in favor of New York arbitration, so that proceedings elsewhere are a breach of contract. The wording that "all disputes arising under or in connection with" the CSAV Agency Agreement "shall be exclusively settled by arbitration in New York" clearly obliges the parties to refer any disputes to New York arbitration, and there is no ambiguity whatsoever about the scope or mandatory nature of this clause.

32. Clause 17 also clearly stipulates that New York law shall apply.

8

33. The fact that Ageport may believe it can do better in the Dominican Republic is irrelevant; the parties have agreed that any claims for compensation are subject to the arbitration clause and thus must be brought here.  If there is a basis to argue that Dominican Republic Law 173 should somehow override the contractually agreed choice of New York law, which is denied, that is an issue to be raised before the arbitrators in New York.

**E. An Injunction in respect of Proceedings against E.T. Heinsen and Interference.**

34. CSAV also seeks an injunction to prevent Ageport from :-

   A.  Commencing any proceedings against E.T. Heinsen in the Dominican Republic seeking damages and/or compensation in respect of the termination of the CSAV Agency Agreement; and

   B.  Taking any steps in the Dominican Republic seeking to interfere with Hapag-Lloyd's appointment of E.T. Heinsen or work in the port operated by DP World Cucedo in respect of the work previously given to Ageport under the CSAV Agency Agreement.

35. While Law 173 purports to render a new agent jointly liable with the principal, the proceedings threatened against E.T. Heinsen are proceedings which impose upon it a liability for compensation/damages on the grounds that CSAV has acted wrongly according to Law 173, and that they are liable to Ageport for compensation/damages calculated according to Law 173.   As such, any such proceedings against E.T. Heinsen in the Dominican Republic are a breach of the arbitration clause and/or are vexatious and oppressive.

36. The very premise of an action against E.T. Heinsen is contrary to the contractual promises made to CSAV and is vexatious and oppressive.  Indeed, the commercial reality is that if Ageport follows up on its threat and does sue and obtain judgment against E.T. Heinsen, CSAV and/or Hapag Lloyd would be forced to indemnify E.T. Heinsen.  Thus, even if CSAV is not actually joined to the proceedings, Ageport would be able to indirectly obtain compensation from the principal by virtue of

9

Dominican Republic Law and Jurisdiction, being precisely what it has promised not to do directly. Further, it is clear that the threatened proceedings against E.T. Heinsen are a tactical device to seek to bring CSAV to the negotiating table in the Dominican Republic.

37. Accordingly, for all these reasons, the threatened proceedings against E.T. Heinsen are vexatious and oppressive and/or a breach of the arbitration clause.

38. Furthermore, whatever the rights and wrongs of the termination and of Hapag-Lloyd using E.T. Heinsen, Ageport has promised that CSAV's liability to it, if any, should be calculated according to New York Law in New York arbitration. The most that Ageport is entitled to under New York law is damages from CSAV; not some form of prohibition on what agent CSAV or any third party may use, or some form of specific performance that they must use Ageport. Thus, interference with the activities of E.T Heinsen should therefore be enjoined.

## F. Security Steps

39. Finally, the Applicants also seek an injunction restraining Ageport from taking any steps whatsoever to obtain security of any form in support of any proceedings in the Dominican Republic of the kind referred to above.

40. On information and belief, Ageport has been making inquiries with DP World as to which containers are owned by CSAV and its subsidiaries and whether they are being transferred to Hapag Lloyd. This gives rise to a serious concern that Ageport is considering some form of attachment or arrest of containers as security for their claims in the Dominican Republic.

41. To seek security in respect of proceedings wrongfully brought or contemplated against CSAV outside the agreed arbitration forum would itself be a breach of the arbitration clause and/or vexatious and oppressive.

10

## FIRST CAUSE OF ACTION

### (Temporary Restraining Order and Preliminary Injunction)

42. CSAV repeats and realleges each and every allegation set forth above as if repeated herein in full.

43. A binding and enforceable agreement exists between CSAV and Ageport pursuant to which the parties have agreed that the exclusive forum for resolution of disputes between them shall be arbitration in New York.

44. As more fully detailed above, Ageport has wrongfully and without legal basis or justification taken affirmative steps to breach, undermine and/or thwart its arbitration obligation, notwithstanding that CSAV has timely demanded arbitration of Ageport in accordance with the CSAV Agency Agreement.

45. CSAV will suffer irreparable harm if Ageport is not restrained from engaging in conduct inconsistent with the arbitration agreement in the CSAV Agency Agreement.

46. CSAV is therefore entitled to a temporary restraining order and preliminary injunction enjoining Ageport from taking any steps inconsistent with its obligation to arbitrate its disputes with CSAV under the CSAV Agency Agreement and/or from harassing or engaging in otherwise vexatious or oppressive conduct in connection with its claims against CSAV.

**WHEREFORE**, CSAV hereby respectfully requests that the Court issue an order:

A. That Ageport, whether by itself or through its directors, employees, officers, or agents (collectively "Ageport Group"), shall be enjoined from commencing, pursuing, or taking any steps in, or procuring or assisting the commencement or pursuit of, any proceeding outside the arbitration proceedings in New York in respect of any disputes between CSAV and Ageport arising under or in connection with the CSAV Agency Agreement, including without limitation, any questions regarding its existence, validity or termination or as to the rights, duties or liabilities of any of the parties arising out of or in relation to the said contract (the "Disputes");

11

B. That Ageport Group shall further be enjoined from (i) commencing, pursuing, or taking any steps in, or procuring or assisting the commencement or pursuit of, any proceeding which seeks damages and/or compensation from E.T. Heinsen in relation to the Disputes and/or the termination by CSAV of the CSAV Agency Agreement, or (ii) taking any steps seeking to interfere with the activities of E.T. Heinsen, in providing any agency services to Hapag Lloyd, by threatening DP World Cucedo, or otherwise howsoever, in connection with the Disputes; and

C. That Ageport Group shall further be enjoined from taking any steps whatsoever to obtain security of any form in support of proceedings encompassed by paragraphs (A) and (B) above, provided, however, that Ageport shall not be enjoined from seeking any relief to which it may otherwise be entitled in connection with the New York arbitration proceedings; and

D. Granting CSAV such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
       May 8, 2015

Blank Rome LLP

Thomas H. Belknap, Jr.
405 Lexington Avenue
New York, New York 10174
(212) 885-5270
tbelknap@blankrome.com
*Counsel for CSAV*

12

## **VERIFICATION**

STATE OF NEW YORK        )
                                              : ss.:
COUNTY OF NEW YORK   )

Thomas H. Belknap, Jr., being duly sworn, deposes and says:

1.      I am a member of the bar of this Honorable Court and of the firm of Blank Rome

LLP, attorneys for the Petitioner.

2.      I have read the foregoing Verified Petition and I believe the contents thereof are

true.

3.      The reason this Verification is made by deponent and not by Petitioner is that

Petitioner is a foreign corporation, no officer or director of which is within this jurisdiction.

4.      The sources of my information and belief are documents provided to me and

statements made to me by representatives of the Petitioner.

Thomas H. Belknap, Jr.

Sworn to before me this
8th day of May, 2015

Notary Public

MICHELE GRANITO
Notary Public, State of New York
No. 01GR6202734
Qualified in Richmond County
Commission Expires Mar 23, 20__

13